The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Eugene G. Doherty presiding. Good morning all. The court is calling the case of Smith v. Department of Agriculture and Costello, number 4-230537. Beginning with counsel for the appellant, I'd ask counsel to state your name for the record. Good morning, Your Honor. Thank you. My name is Daniel Shapiro, counsel for the appellant. And for the appellee? Good morning, Your Honor. My name is Valerie Quinn. I am counsel for the appellee. All right. Good morning to both of you. Mr. Shapiro, you may proceed. Thank you, Your Honor. The appellant filed his complaint in the circuit court against the department in relevant part on the failure of the department to follow the Cannabis Regulation Taxation Act, which I'll refer to today as the Act, in awarding craft grow licenses, and in particular with reference to my client. Our complaint alleged facts that support each element of mandamus, including the department's failure to perform non-discretionary responsibilities under the Act. We made these allegations and made the allegations that the department had to and was required under the Act, particularly with reference to Article 7, follow the precepts and the rules and regulations of the Act. The department filed a motion to dismiss which on May 12, 2023, the circuit court granted with prejudice. In doing so, the court concluded that the mandamus was invalid because there were no non-discretionary actions that could support it. It found that there were no exceptions to the ARL. And in doing so, the Supreme Court only looked at the department's second process and only looked at the Article 30 under the Act, which is discretionary, not mandatory as Article 7 would be. We believe that the circuit court's decision and its analysis was incorrect. To be clear, the plaintiff seeks a license. The plaintiff doesn't seek a rescoring because, as argued in our briefs and argued today, its score was 999. It doesn't need a rescission because, as we alleged in our briefs and today, it has never been disqualified. It seeks a license that it's entitled to under the Act. The department is responsible, as this court knows from our briefs, for administering the Act and promulgating certain rules so that licenses, including craft grow licenses, can be applied for and acquired. It has the responsibility to oversee that process. And in that responsibility, there are two articles that are pertinent here. As I just mentioned, Article 30, which I will reference a couple times today as a discretionary article, and Article 7, which is a mandatory article. Article 30 pertains more to the discretionary options, if you will, of the department to issue certain deficiency notices when it comes to scoring. It does not pertain to the social equity program, which Article 7 does. And because social equity is such an important critical piece of the legislative intent of this Act, the social equity piece of this, Article 7, is mandatory. The words you will see in the rules. Well, it's easy to say that the article, the program, is mandatory, but aren't the department's decisions in administering that article necessarily vested with some degree of discretion? Your Honor, there are rules in Article 7 that have mandatory language. I thought we didn't have any rules. There are rules that are mandatory, and we also allege that they fail to promulgate rules, which I would like to argue to this Court. But in those rules, there are mandatory directives to the department. For example, you must give a deficiency notice under Article 7 if your SEA, social equity application, is deficient. You must do that. That's a mandatory rule. Now, there are other aspects of our argument where we say they fail to promulgate rules. So, to your point, Your Honor, yes, our argument both says that the rules that are required and mandatory weren't followed, and that there weren't rules promulgated in the first place, both of which. Let's say that the person, the citizen who brings the claim about the failure to promulgate rules is not you, just some other citizen. What rules could they say were not promulgated? The reason I ask it that way is because your arguments are always intertwined with your grievance, which I understand. But what rules are there that you're arguing for that are not rules that are essentially about giving your client the relief that it wants? In this case, this case is unique and identifies or sheds some light on the fact that there were no rules in certain circumstances. What are those rules, to your point, Your Honor? Yeah, well, what would you be arguing the rules should be? One, contrary to what happened in this case, the 200 SEA points that are given under Article VII can't be taken away without notice. That happened. Two, you have to provide an automated scoring system. It wasn't provided. And why do I say that? Isn't that a discretionary decision about whether it's automated? No. The rules under Article VII says that the department must develop a system to accomplish these goals. If that system fails, then they haven't done what they're supposed to do. So then your next question to me is, well, they promulgated the rules. They didn't. They didn't promulgate any rules on how that system is to be accomplished. But the statute doesn't say you have a right to bring a mandamus claim if the department enacts inadequate rules. It basically says if it doesn't enact any rules at all, fails to adopt rules. And if you have a grievance in an individual case from a rule deficiency, I understand why that might come up in an individual case. But isn't that provision basically to kick the department in the rear end if it's not moving forward with developing any rules? Another critical rule that was not adopted here, Your Honor, is as you may have gleaned from our brief, what happened at the very end of this is our client's SEA application was then kind of magically transferred and transformed to a non-SEA application. There's no rule that says how that can be done, why that can be done, under what circumstances that can be done. So doesn't that seem like an individual claim by you that that was not permitted by the rules rather than a mandamus action telling the department to write the rules in a certain way? If you don't have rules, which we allege they didn't, then how can an applicant have any guidance in terms of the process? Rules are what our laws are governed on and rules are what we all, that's why we're here for rules. You follow the rules. And if there are no rules, then either you can't have the consequences of the fact that there are no rules or you don't know what rules to follow. But to me, the big tell here is you're not asking that they be required to adopt these rules. That's all you're asking. You're saying, and that they be retroactively applied. I think that's the big tell here. This is not about creating rules for the department's benefit. This is about creating rules that would give your client individual relief in a case that you're styling as a mandamus matter about rules when it's really about the merits of his application when he didn't timely appeal that under the APA. The rules would not only provide relief to my client, but would provide clarity to future applicants. Yeah, but the retroactive part, we know that helps. The retroactive part is intertwined with the fact that there were some rules that weren't adhered to. So we have a double whammy, Your Honor. No, you've asked for new rules and asked that they be applied retroactively. That looks to me like an administrative review complaint dressed up in the robes of a mandamus action. May I continue?  Thank you. Under Article 7, these rules that some of which were followed, and some of which weren't, and some which for the sake of argument today, Your Honor, were never promulgated. The social equity applicant must receive a deficiency notice if that social equity applicants application is deficient. Our position, Your Honor, is that never happened. Exhibit G, which is in the application, is an all or nothing. That's the social equity exhibit to the application. How is that not the subject of an appeal of the final decision, rather than a mandamus action? We received the 200 points, and in this long-stored intertwined process where it kept on getting rescinded and rescinded and rescinded, our social equity piece of it was ultimately rescinded. We never received any disqualification or notice of disqualification or deficiency to the contrary. So, by inference, Your Honor, because they accepted the application, because the department accepted the $2,500, because the department never issued a deficiency notice, our social equity application status is approved. And because of that, the 200 points is awarded. How does that go to the rules? There was never any deficiency notice, even though it's mandated, that was issued to the contrary. 7-20, 7-20, mandate the department shall send a deficiency notice. It then says it shall then be the department's requirement to then grade or assess the balance of the application. So, to your point, Your Honor, and one of the aspects of this case is finality and ARL. Because our application received the 200 points, because it was never disqualified, it's held in abeyance. It's in the atmosphere. There's been no finality to that application, and because there's no finality to that application, there's no Administrative Review Act applicability. And because of the endless cycle of application, deficiency notice, disqualification, rescission, back and forth, as we've talked about, both with the circuit court and in our briefs with this court, that process has never been concluded. When you put the totality of circumstances here, Your Honor, and court, you have a situation where the ARL cannot be the sole and exclusive remedy to fix this wrong. It cannot be. It will not fix it. It will not change the circumstances. It will not afford any relief under the ARL. The only thing we argue, as we argue to this court, is a mandamus because of the things that we've urged and because of the way that this has laid out over the last several years. We filed a mandamus because of the reasons I stated, because in addition, had we filed an ARL, which we didn't intentionally, we wouldn't get the relief that we're asking for. It would be futile, and it wouldn't provide anything that has changed. There wouldn't be any conclusion to this application, which is held kind of in no man's land. Well, wasn't your application unsuccessful? And weren't you so notified? And I know we know now why, because they dropped the 200 points, but you know your application was unsuccessful. I disagree with you, Your Honor. Okay. Our application was initially disqualified. Then what we talk about in our papers is an internal appeal, an internal request after the disqualification. The disqualification was rescinded. Then it was regraded, and then it was disqualified again. We asked for another internal appeal. It was rescinded again. We then moved forward through the process with our SEA application, which to this day has never been determined to be a deficiency or a disqualifying nature. So I disagree with that premise, Your Honor. But it was unsuccessful. I don't know what you mean by unsuccessful. Because of the score that it was given, correctly or incorrectly, it did not receive one of the licenses that it was seeking. It didn't receive one of the licenses, but it doesn't mean it was unsuccessful because, Your Honor, that is suggesting some sort of finality. There is no finality to it. It received 999, and it's been held in this no man's land since. So to say it's unsuccessful, I would be conceding it's final. It's not. I would suggest that 999 is the score that we have received, the score that sticks. There has been nothing more since that time, and since the department has never found that to be deficient, I would suggest, Your Honor, that 999 exceeds the top scoring applicants of 984, which the department has come down and identified, entitling it to a license. So, I mean, you initiated a mandamus complaint, not knowing that your license was unsuccessful, your application was unsuccessful. You are conceding in the middle of the process? Yeah. So, again, I do not agree that our license was unsuccessful. But what I do agree, what I do suggest is that the department should have a license. And what I do say is our license received 999 points, and it's been held in this. Should have received, right? No, I would say it did receive it. So I want to make sure I understand. You're saying this process is still pending on your application? There's not been a denial of the license? That's correct. That's correct. Again, you're asking us to issue a license or order that a license be issued on a process that's not complete? I'm asking for alternative relief, Your Honor. One, to issue a mandamus to either require that the rules be followed or that the rules that weren't promulgated be promulgated. Two, to issue a license. I am not asking for a rescoring because we received 999. I'm asking for some relief to move this process forward because we've been held in no man's land for two years. Because we've been held by inference, since there has been no suggestion that our 200 points of social equity has been deficient, we have 999. Something has to be done here. That's why we filed a mandamus complaint. In June of 22, you received a notice from the department by email and certified mail that you only received 799 points. And I'm not going to say that that was the right score, but that's what it said. And that you didn't meet the cutoff. And then it said, applicants who wish to seek a judicial review of this final administrative decision have until July 6 to file a claim. How was that not a final decision? The June 22 decision was wrong because it wrongfully and inappropriately revoked our social equity status. Right, but that's what administrative review is about. If you think that decision was wrong, you file for administrative review of that decision. That decision was based upon the deficiency notices under 30. So, to your point, without, it's this cycle. I understand. There was a lot of errors here that didn't come from your side of the table. I get that. But we still got to, we don't want to compound that by making procedural errors of our own. It's hard to understand why that would not have been the point at which you seek administrative review of what you're saying was, now you're saying that wasn't even a final decision. It pertained to round two. It didn't pertain to round one, wherein our application was submitted and scored and reviewed. It pertained to round two, not round one. That's more internal on the department's part. You're only going to get one license. It doesn't particularly matter to you whether you get it in round one or not. And that is part of what has caused my argument to this court of the distinction between Article 7 and Article 30. Going into the second process, which that notice was, the department had determined that we were an SEA, that it reviewed the applications, and it did nothing contrary to that fact. Without Article 7 rules in place, I think my time is short, but I don't, I can't, I don't have a red buzzer, so I'm going to... So you'll see it in a minute. Okay. Without Article 7 rules in place, what can happen to my client can happen to anyone. The department can score a social equity application as a non-social... May I finish the sentence? You can finish your thought. Thank you. As a non-social equity applicant using nothing more than a discretionary 30 notice, waive the social equity applicant's right to a mandatory 10-day right to care, awarded a final score without social equity points, and called final. That's what happened. Thank you. Thank you. Ms. Quinn. Good morning, Your Honors. The June 2022 decision was about as final a decision as a thing can be. It has all the elements of a final decision. It determined the legal rights, duties, and privileges of the parties, and it terminated the proceedings. As the First District described it back in 1995, it means the agency has taken definitive action, an applicant was adequately informed, right to appeal the agency's decision, and of the time period for doing so. This decision should be before the reviewing courts on a complaint for administrative review. That is the method of review that the General Assembly specified explicitly in the Act. And, Your Honors, the record's kind of confusing in this case. It would not have been if this case were reviewed in the manner that the General Assembly prescribed, because if it had gone up on administrative review, the agency in due course would have filed its record as its answer. And that record would have contained everything that occurred with respect to C.U. Gros' application, or Mr. Smith, whoever the plaintiff is here, with respect to C.U. Gros' application. Can I just, since you said that? Absolutely. You have not made any issue of standing in the case with respect to Mr. Smith? We did not, Your Honor. We are not sure that Mr. Smith has standing, but the article, the argument of jurisdiction... You haven't raised that as an issue in the case? No, we noted it in a footnote that there was an ex, people ex rel, but it just didn't seem to make any sense in the context of this case, Your Honor. Right. And the jurisdictional argument was so clear and so clean that that's how the department decided to litigate it. Where the ARL is adopted, it is the exclusive method of review, and all questions of fact and law could have been brought, including any constitutional arguments. But once that period expires, the Circuit Court lacks jurisdiction to consider the case. And so this court must decide, and it's pretty much the only question in front of this court, is was the Circuit Court correct in finding that it lacked jurisdiction? Mandateness is inappropriate, Your Honors, because the Cannabis Act specifies in plain language how agency decisions are to be reviewed. And the fact that a portion of the Act refers to special considerations, benefits that the Department of Financial and Professional Regulation gets, has no bearing on whether a method of review that is unspecified anywhere in 5555 can suddenly magically be applied for. The question of rules under Article 7, Your Honor, this is an interesting question, because Mr. Smith began by arguing that the department failed to promulgate rules at all. And when it was pointed out that the department did promulgate rules, he argued, well, it didn't promulgate rules specific to electronic uploads. But, of course, a specific rule, whether or not to promulgate a specific rule, is a discretionary action on the part of an agency. Now, for the first time in his reply brief, he's arguing that the department failed to fulfill its Article 7 responsibilities. Aside from being forfeited, Your Honors, the claim is simply wrong. The department promulgated a host of rules for all of its responsibilities under the Act. But Article 7 is mostly directed at leveling the playing field for applicants whose financial reach and access to credit has been harmed by their prior interactions with law enforcement over cannabis-related issues. So in service of that goal, the General Assembly created a Cannabis Business Development Fund, and it gave the Department of Commerce an economic opportunity, the authority to make loans and grants. Well, who gets a loan, and for how much, and on what criteria? Those are discretionary decisions, and they call for rulemaking for exercising that discretion. But, of course, Mr. Smith is not concerned about that. He thinks that the department erred in not awarding him the 200 SEA points in CU Gross' final score, and that isn't it. It sounds like sometimes the department thinks that, too. The department, I'm sorry, that... That it may have erred in not awarding the 200 points. The department has never thought that it erred in not awarding the 200 points. There were... This is all... See, this is all outside the records. I could tell the court why it was rescinded. I could tell the court why those points were awarded. But it's outside this record. I understand. Okay. But to say... To say, as Mr. Smith does, that they were never notified that their SEA materials were deficient is simply untrue. They were notified in August of 2020. They were notified again March 19, 2021. That's their Exhibit 8 to their complaint. If you look at the bolded text at the top, it says, The information identified as missing from your application in the August 6, 2020 Deficiency Notice is again identified in this Deficiency Notice below. That August deficiency was about the SEA points. They may have uploaded more material, Your Honors, but they did not correct the deficiency. And it was explained to them a third time on September 28, 2021. It says, One of your principal officers did not provide sufficient proof of residency. That's residency in a disproportionately impacted area. They were told. There were a couple of other things, but that was the main one. They were never entitled to those 200 points. It's kind of a shame because it is a pass-fail inquiry. If your information is complete, you get the 200 points. If it's not complete, you don't get them. And that's where we are. And as I say, this would all have been clear if a complaint for administrative review had been brought. Mr. Smith seems to think that he was harmed in some way by the fact that. His decision was rescinded, and he was placed back in the applicant pool during the course of the 2021 consolidated litigation. But he was not harmed by that, Your Honors. Nobody got a license as a result of the 2021 litigation. Any prevailing applicant in that case was taken, was placed back in the pool for consideration for a license. Well, that's exactly what happened to see you grow in this case. They simply got the same relief everybody else got. They just got it earlier. And consideration went on, and then they again got a notification of further deficiencies. But they'd already been told three times that their SEA materials were deficient. There were other deficiencies on top of that. So it is the department's position. This should have gone up through an administrative review complaint. Instead, a mandamus was filed five months later. There's no jurisdiction. And unless the court has further questions for me, we would simply stand on our briefs, Your Honor, and urge that the circuit court's decision be affirmed. Thank you. Back to you, Mr. Shapiro. Thank you, Your Honor. My client was harmed because it wasn't allowed to go in the process for the first 40 licenses. Significant harm. In addition, the fact that the counsel said, yes, my client was notified of the SEA deficiencies, yes. But those deficiencies were wrong, and that's why any disqualifications that were associated with those deficiencies were rescinded. Isn't that classically what you seek review if you think they got it wrong? You seek review under the administrative review law. We did that. We filed an ARL claim, Your Honor. And the court in that case said at that point, well, I agree. It's now moot because the department has identified its errors, and it's going to rescind disqualification. So to my point earlier, how many times do we have to go through this while this application is being held up without finality? Again, once you have the SEA satisfied, which we allege we did because there's nothing to the contrary, then the application gets scored with a final score. There's never been recognition of that or finality to the court's point earlier. So what alternative do we have? I'm still mystified at the idea that a notification that you didn't get a license, that your score was too low, and that if you want to bring a matter for administrative review or appeal, they give you a deadline. I don't know how in good faith you can construe that to be non-final. I'd like to answer that in a couple ways, Your Honor, if I could just find my notes. One is, let's look at the affidavit of Sherry Baker, which we have in our papers, which I did not talk about earlier. The affidavit of Ms. Baker says, you have an application, you're qualified to receive a license. I have the affidavit. I'm not sure that's what it says. CU may receive a craft code license if it cures deficiencies in December 6. Right. That's an if. We don't have a record showing that the if was satisfied. What we don't have, Your Honor, is any declaration from Sherry Baker saying one of your deficiencies is the social equity deficiency. What we have, though, is a decision saying you don't get a license, you didn't score high enough, and you can seek review, and none will saw it. That affidavit, Your Honor. The affidavit is from 2021, and the notice is from 2022. Understood. But the notice itself is on the Rule 30 notice, where there's no scoring on those exhibits. Those exhibits are non-scoring exhibits. So how does that affect, at the end of the day, the change in the score? It also, as I said before, was in Round 2. We're concentrating on... How does any of that affect its finality? I understand you have issues with it. How does it affect its finality or excuse you from seeking the normal mode of relief? Because our process was confined to the first 40. That's where our application was filed. Now we're having a deficiency notice that is somehow left into or transformed into the second process, which is not pertinent to where we were and where we left off in the first process. But it's final. It's final but not effective in this matter to this client. It can say final, Your Honor, but it's not effective to this client at this time. At that time. If we concentrate on the issue of finality, Your Honor, one of the things that we stress in our papers is that there was no final decision, as I mentioned a couple times before. And with that, you cannot file an ARL claim without finality. So it could say final, but it wasn't final because of the circumstances, as I've argued before. All right. Thank you, counsel. We will take the matter under advisement, issue a decision in due course. We now stand in recess.